ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 MAR 19 PM 3:10
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-028 |
| | ) | |
| JOHN TRIPP, Doctor, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who at the time he commenced this case was an inmate at Dodge State Prison ("DSP") in Chester, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983 and is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is before the Court on two motions to dismiss by Defendant: a "Pre-Answer Motion to Dismiss" and a "Motion to Dismiss for Want of Prosecution." (Doc. nos. 13, 18.) Plaintiff failed to respond to Defendant's "Pre-Answer" motion; accordingly, it is deemed unopposed.[1] See Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's "Pre-Answer Motion to Dismiss" be **GRANTED** (doc. no. 13), that Defendant's "Motion to

---

[1] The Court issued a notice to Plaintiff when Defendant's "Pre-Answer Motion to Dismiss" was filed, advising him of the consequences of a motion to dismiss and informing him that his failure to respond would result in the motion being deemed unopposed under Loc. R. 7.5. (Doc. no. 15.) When the time for filing a response passed, the Court provided Plaintiff a 15-day extension, again advising him that his failure to respond would result in the motion being deemed unopposed. (Doc. no. 17.) Plaintiff still failed to respond within this extended time period. Moreover, the Court has determined that it need not await a response with respect to Defendant's "Motion to Dismiss for Want of Prosecution" for the reasons discussed infra, see Part II.B.

Dismiss for Want of Prosecution" be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 18), that this case be **DISMISSED** without prejudice, and that this case be **CLOSED**.

I. BACKGROUND

Plaintiff commenced this case by filing his complaint in April of 2012. (Doc. no. 1.) As noted above, Plaintiff is proceeding IFP in this case. In its Order granting Plaintiff permission to proceed IFP, the Court advised Plaintiff that "he shall immediately inform this Court of any change of address," and that his failure to do so "will result in dismissal of this case, without prejudice." (Doc. no. 3, p. 4.)

Turning to his complaint, Plaintiff alleges that, upon his arrival at DSP on August 23, 2011, unspecified parties at DSP failed to honor his profiles for "(1) bottom bunk, (2) lower range, (3) no prolong[ed] standing or walking and (4) use of a cane." (See doc. no. 1, p. 5.) Specifically, Plaintiff alleges that he was given a top bunk. (Id.) Plaintiff also claims that he did not get to see a doctor upon arrival at DSP. (Id.)

Plaintiff further alleges that the week after he arrived at DSP, he fell off the top bunk, and was subsequently diagnosed with a sprained neck and back at an outside hospital. (Id.) According to Plaintiff, when he returned to DSP, he was again given a top bunk, and he was also given a pain medication, Ultram, which "helped a little." (Id.) Plaintiff reports, however, that Defendant then changed his medicine to "Indomethacin (which hurt [his] stomach)." (Id.) Thereafter, Plaintiff asserts that Defendant gave him "Robaccin," and that "they did not work." (Id.) Plaintiff alleges that "[a]fter all this suffering, [Defendant] never put [him] back on Ultram." (Id.) Plaintiff asserts that Defendant "did not insure that [Plaintiff] received proper medical treatment, he changed [Plaintiff's] medication, he neglected [Plaintiff's] physical disabilities and he failed to properly treat [Plaintiff]." (Id.) According to Plaintiff, Defendant's

2

"inactions caused [him] to suffer both physical and mental pain." (Id.) Plaintiff seeks compensatory damages for his physical pain and mental anguish, injunctive relief in the form of a transfer, court costs and legal fees, and "any other sanction and punitive damages" the Court determines. (Id.)

Because Plaintiff is proceeding IFP, the Court screened his complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. The Court allowed Plaintiff to proceed with a § 1983 claim against Defendant based on allegations that he showed deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[2] (Doc. no. 10.) In its Order allowing Plaintiff's claim against Defendant to proceed, the Court advised Plaintiff that "[w]hile this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address," and that failure to do so "will result in dismissal of this case." (Id. at 5.)

Defendant now seeks to dismiss Plaintiff's complaint in two separate motions. In the first, Defendant contends that Plaintiff failed to exhaust administrative remedies, that his complaint fails to state a claim upon which relief may be granted, that Defendant is entitled to qualified immunity, and that Plaintiff is not entitled to recover money damages against Defendant in his official capacity.[3] (See doc. no. 13-1.) In the second motion, Defendant contends that Plaintiff's complaint should be dismissed for his failure to notify the Court and

---

[2]Upon screening Plaintiff's complaint, the Court additionally recommended dismissing the other named defendant, Marty Allen, the Warden at DSP during the time period at issue, as Plaintiff's claims against him were either deficiently vague and conclusory or failed to state a claim for imposing liability on Warden Allen as a supervisory official for the alleged misconduct of his subordinates. (Doc. no. 8.) Plaintiff did not file objections, and the Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation as the opinion of the District Court. (Doc. no. 11.)

[3]Defendant also sought, and was granted, a stay of discovery pending resolution of his motion to dismiss. (Doc. nos. 14, 17.) Notably, the Court afforded Plaintiff an extended period of time to respond to the motion to stay (see doc. no. 16), but he did not file a response.

3

Defendant of a change of address. (See doc. no. 18.)

As explained below, the Court concludes that Plaintiff's complaint is due to be dismissed without prejudice either for his failure to exhaust administrative remedies or for failure to prosecute; therefore, the Court finds that it is unnecessary to reach Defendant's other arguments for dismissal.

## II. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

#### 1. Legal Standard for Exhaustion of Administrative Remedies

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendant has here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir.) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long

4

as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

## 2. Plaintiff's Failure to Exhaust Administrative Remedies

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). If an administrative remedy is "available," it must be exhausted to satisfy § 1997e(a). See id. at 1326 (explaining that under PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'"). Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005), cert. denied, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159.

5

Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 F. App'x 918, 920 (11th Cir. 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).[4]

### 3. The Administrative Grievance Process

As Defendant correctly observes, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' ("GDOC") Standard Operating Procedure ("SOP") IIB05-0001 that became effective on June 1, 2004. (Doc. no. 13-1, p. 4; doc. no. 13-2 (hereinafter "Fuqua Aff."), ¶ 4 & Attach. "A.") Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process

---

[4] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled in part on other grounds by* Porter, 534 U.S. at 532; Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corrs., 182 F.3d 532, 538 (7th Cir. 1999).

may be waived upon a showing of good cause. See id. §§ VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. §§ VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Here, Defendant has shown that Plaintiff's claims against him should be dismissed without prejudice because of his failure to satisfy the exhaustion requirement of § 1997e(a). In support of his motion to dismiss, Defendant has produced the affidavit of Nikki Fuqua, the Chief Counselor at DSP, a record of Plaintiff's movement history, and a record of Plaintiff's grievance history during his incarceration at DSP. (Fuqua Aff. & Attachs. B, C.) These documents establish that Plaintiff was transferred to DSP on August 23, 2011, and that he remained incarcerated there, aside from a brief nine-day move to Baldwin State Prison from September 20 through September 29, 2011, until September 6, 2012, when he was transferred to Jenkins Correctional Facility. (Id., Attach. B.) While at DSP, Plaintiff utilized the

7

grievance process five times, the first time on September 3, 2011, and the last on August 7, 2012. (Id., Attach. C.) According to Ms. Fuqua, Plaintiff's five grievances at DSP concerned the following: (1) Plaintiff fell from the upper bunk despite his bottom bunk profile on September 1, 2011; (2) Plaintiff fell onto his back from his upper bunk on December 31, 2011; (3) the staff at DSP was negligent for not opening the closet when Plaintiff requested; (4) Plaintiff feared for his life because of a complaint he made about officers; and, (5) Plaintiff did not want to eat the food at DSP because it was prepared by other inmates.[5] (Fuqua Aff. ¶¶ 19-21.) None of Plaintiff's grievances at DSP, however, concerned the allegations in his complaint against Defendant regarding allegedly inadequate medical care for injuries sustained after falling from his bunk, his pain medication, or any anguish he suffered because of Defendant's actions. Indeed, none of Plaintiff's grievances at DSP concerned Defendant at all. Simply put, Plaintiff did not exhaust his administrative remedies with respect to his Eighth Amendment claim against Defendant before filing his complaint in April of 2012. Accordingly, the Court recommends that Defendant's "Pre-Answer Motion to Dismiss" be **GRANTED**, and that this case be dismissed without prejudice for failure to comply with the exhaustion requirement of § 1997e(a).

### B.     Failure to Prosecute

Even if § 1997e(a) did not provide a basis for dismissal here, however, Defendant also seeks to dismiss this case for want of prosecution pursuant to Fed. R. Civ. P. 41(b). Defendant

---

[5] According to Ms. Fuqua, as well as the record of Plaintiff's grievances, Plaintiff filed a formal grievance and appeal about the alleged incident where he fell onto his back out of the upper bunk. (See Fuqua Aff. ¶ 20 & Attach. C.) For the remainder of the grievances, however, Plaintiff did not pursue any administrative remedies beyond an informal grievance. (See id.)

has presented affidavit[6] and documentary evidence that Plaintiff was transferred from DSP to Jenkins Correctional Facility on September 6, 2012, and remains incarcerated there to this date. (See doc. no. 18-2, ¶ 8 & Attach. A-1.) At no point, however, has Plaintiff informed the Court of a change of address.[7]

The Court has twice informed Plaintiff of his obligation to notify this Court if his address changed while this action was pending, and the Court both times informed him that failure to do so would result in dismissal of this case.[8] (See doc. no. 3, p. 4; doc. no. 10, p. 5.) The Eleventh Circuit has stated that "[a] district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). This authority includes the power to dismiss a case for failure to prosecute or failure to comply with a court order. Id. (citing Fed. R. Civ. P. 41(b)); see also Hyler v. Reynolds Metal Co., 434 F.2d 1064, 1065 (5th

---

[6] Defendant presented the affidavit of Sandra Williams, who attests that she is an Administrative Assistant at DSP. (See doc. no. 18-2.) Ms. Williams further attests that her responsibilities include "keeping, preparing, and organizing documents, such as logbooks, post documents, and other records," and that she made the affidavit based upon her personal knowledge of its contends and "records that are maintained in the ordinary course of business with the [GDOC]." (Id. ¶¶ 3-4.)

[7] Although the Court is reluctant to rule on a dispositive motion without first hearing from *pro se* Plaintiff, unfortunately, it is apparent that Plaintiff has failed to inform the Court of a change of address, and he has thus not provided the Court with a means of communicating with him.

[8] As noted earlier, Plaintiff was advised of this requirement *before* his transfer from DSP, in Orders dated April 12, 2012, and August 30, 2012. (Doc. nos. 3, 10.) Indeed, Defendant has presented a certified copy of records from DSP showing that Plaintiff signed for mail from the United States District Court on September 5, 2012. (Doc. no. 18-1.)

9

Cir. 1970)[9] ("It is well settled that a district court has inherent power to dismiss a case for failure to prosecute . . . ."). Moreover, the Local Rules of the Southern District of Georgia dictate that an "assigned Judge may, after notice to counsel of record, *sua sponte* . . . dismiss any action for want of prosecution, with or without prejudice . . . [for] failure to prosecute a civil action with reasonable promptness." Loc. R. 41.1(c).

The test for determining the appropriateness of dismissal is whether there is "a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice," Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985). Here, Plaintiff's failure to notify the Court of a change of address, despite being advised twice in Orders of the Court to do so, amounts not only to a failure to prosecute, but an abandonment of his case. This is precisely the type of neglect contemplated by the Local Rules. Furthermore, because Plaintiff is proceeding IFP, the Court finds that the imposition of monetary sanctions is not a feasible sanction.

However, the Court recognizes that Plaintiff is proceeding *pro se*, and courts have voiced a dislike for the harshness of dismissing a *pro se* case with prejudice prior to an adjudication on the merits.[10] See, e.g., Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993); Dickson v. Ga. State Bd. of Pardons & Paroles, No. 1:06-CV-1310-JTC, 2007 WL 2904168, at *6 (N.D. Ga. Oct. 3, 2007). Thus, the Court is not persuaded that it would be

---

[9]In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[10]Unless the Court specifies otherwise, a dismissal for failure to prosecute operates as an adjudication on the merits. Fed. R. Civ. P. 41(b).

appropriate to dismiss the instant action with prejudice.[11] The Court is not permanently barring Plaintiff from bringing a meritorious claim. It is simply recommending dismissing the case without prejudice until such time as Plaintiff is willing to file his case <u>and pursue it</u>.[12]

Accordingly, the Court also recommends that Defendant's "Motion to Dismiss for Want of Prosecution" be **GRANTED IN PART** and **DENIED IN PART**, and that this case be dismissed without prejudice for failure to prosecute. (Doc. no. 18.)

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant's "Pre-Answer Motion to Dismiss" be **GRANTED** (doc. no. 13), that Defendant's "Motion to Dismiss for Want of Prosecution" be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 18), that this case be **DISMISSED** without prejudice, and that this case be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[11] Defendant requests that the dismissal be with prejudice. (Doc. no. 18, p. 3.)

[12] As noted <u>supra</u>, however, Plaintiff would also be required to exhaust administrative remedies before refiling this case. <u>See</u> Part II.A.

11